```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF KENTUCKY
              NORTHERN DIVISION AT COVINGTON
```

**CIVIL ACTION NO. 2:13-cv-222 (WOB-CJS)**

**CRISIAN GALVAN**                                               **PLAINTIFF**

**VS.**                    <u>**MEMORANDUM OPINION AND ORDER**</u>

**DELTA AIR LINES, INC., ET AL.**                              **DEFENDANTS**

**I. Introduction**

In this premises liability action, Plaintiff Crisian Galvan alleges that Defendants Delta Air Lines, Inc. ("Delta") and GoJet Airlines, LLC ("GoJet") negligently maintained a jetbridge, causing Plaintiff to fall and suffer bodily injuries while deplaning at Cincinnati/Northern Kentucky International Airport ("CVG"). This matter is before the Court on motions for summary judgment by Delta (Doc. 33) and GoJet (Doc. 35). The Court has concluded that both defendants are entitled summary judgment and announced this decision at oral argument held on June 1, 2015.

**II. Factual and Procedural Background**

On November 24, 2012, Galvan and her then-six-year-old daughter flew from St. Louis to CVG on a Delta flight operated by GoJet under the name "Delta Connection." Doc. 35-5, Galvan Dep., at 26. After the plane landed at CVG and pulled up to Gate B-10, Galvan and her daughter exited the aircraft and waited on the jetbridge to pick up their two roller-style suitcases that were gate-checked in St. Louis. *Id.* at 35, 37. After retrieving the suitcases, Galvan and her daughter began walking up the jetbridge toward the terminal. *Id.* at

45. Less than halfway up the jetbridge, Galvan tripped and fell on her left side. *Id.* at 46, 52-53.

Although she alleged in her complaint that a metal "protrusion" caused the fall, she testified in her deposition that she stepped on an "uneven" piece of metal, "like a piece of metal that is part of the ramp itself; it's on the floor."[1] *Id.* at 45-46. Galvan testified that she "felt" the metal piece but did not look back to see exactly what had caused her fall. *Id.* at 52-53. When shown a photograph of the jetbridge, Galvan testified that she tripped over one of the metal strips that moderate changes in height on the jetbridge.[2] *Id.* at 50-54. When asked whether the metal strips were affixed to the walkway on the day of the accident, Galvan testified that they were not "just laying [sic] loose." *Id.* at 101. Initially, Galvan testified that it was "bad luck" that she fell. *Id.* at 46.

After the fall, Galvan got up without assistance, walked the remainder of the jetbridge, went to the restroom, and proceeded to the gate where she was to board her connecting flight. *Id.* at 58-59. Galvan testified that she was in pain and requested Tylenol from a Delta employee at her connecting gate. *Id.* at 60. The employee then

---

[1] Galvan also testified that she had flown previously and had "seen [similar metal strips] on other ramps." Doc. 35-5, Galvan Dep., at 46; *accord id.* at 26–27.

[2] The jetbridge is comprised of three telescoping tunnels that extend and retract so that the jetbridge can service varying types of aircraft. *See* Doc. 35-6 at 34-35. Because each "tunnel" fits inside the one ahead of it, there is a change in elevation of approximately six inches at the points of transition between tunnels. *Id.* at 35–36. Metal strips or plates span this transition to smooth the walkway. See *id.* at 36; Doc. 35-8, Photograph of Jetbridge. The strips are silver, in contrast to the carpet which is black or dark colored. Doc. 35-8, Photograph of Jetbridge.

2

contacted security and the police; Galvan was later transported to the hospital by ambulance. *Id.* at 59. At the emergency room, Galvan was prescribed pain medicine and released. *Id.* at 63. Galvan's pain continued after she returned home, prompting her to obtain additional treatment including physical therapy, chiropractic care, and, eventually, two surgeries. *Id.* at 66-70, 84, 90. She brought this action in the Boone Circuit Court on November 25, 2013, Doc. 1-1, Complaint. Defendants removed the case to this Court on December 20, 2013, pursuant to 28 U.S.C. § 1332.

**III. Analysis**

**A. Plaintiff's Claim Against GoJet**

GoJet argues that it is not liable to Galvan because it did not "own, inspect, maintain, operate, use or control" the jetbridge where Galvan fell. Doc. 35-1, Memo. in Support of Def. GoJet's Mot. for Summ. J., at 1. Delta admits that it owns, used, maintained, and inspected the jetbridge where the incident occurred. *See* Doc. 35-6, Verberg Dep., at 18-19, 24-25, 28-30, 56-57, 63-64. Plaintiff does not dispute this fact.

Premises liability law implicates the duties owed by owners and occupiers of premises to those who enter. Louis A. Lehr, Jr., 2 Premises Liability 3d § 36:1. Because GoJet did not own or occupy the jetbridge, GoJet owed no duty to Galvan while she was walking up the jetbridge, and her premises liability claim against GoJet fails as a matter of law. Thus, the Court concludes that GoJet is entitled to summary judgment.

3

### B. Plaintiff's Claim Against Delta

To prevail on a negligence claim in Kentucky, a plaintiff must prove the following elements: (1) the defendant owed a duty to the plaintiff; (2) the duty was breached; and (3) consequent injury followed. *Shelton v. Ky. Easter Seals Soc., Inc.*, 413 S.W.3d 901, 906 (Ky. 2013). A land possessor owes all those who enter the land a general duty of reasonable care. *Id.* at 908. Land possessors are not insurers of the safety of entrants to their land, but are "required to maintain the premises in a reasonably safe condition." *Id.* What constitutes reasonable care depends on the status of the plaintiff as an invitee, licensee, or trespasser. *See id.* at 909 (explaining that "Kentucky law remains steadfast" in adhering to these traditional classifications).

An invitee is one who "enters upon the premises at the express or implied invitation of the owner . . . in connection with the business of the owner . . . ." *Id.* Galvan was an invitee because she came upon Delta's jetbridge as Delta's customer. Therefore, Delta owed her a duty to "discover unreasonably dangerous conditions on the land and either eliminate or warn of them." *Id*.

Whether Delta breached this duty is not a triable issue because the record does not contain sufficient evidence from which to infer that an "unreasonably dangerous condition" existed on the jetbridge. Kentucky law defines an unreasonably dangerous condition as "one that is 'recognized by a reasonable person in similar circumstances as a risk that should be avoided or minimized' or one that is 'in fact

4

recognized as such by the particular defendant.'"  *Id.* at 914 (quoting Dobbs, The Law of Torts § 143, p. 335 (2001)).  Open-and-obvious dangers, such as a "small pothole in the parking lot of a shopping mall[,] steep stairs leading to a place of business[,] or perhaps even a simple curb[,]" typically "may not create an unreasonable risk." *Id.*  Although the Kentucky Supreme Court, in recent years, has narrowed the application of the open-and-obvious doctrine, *see, e.g.*, *id.* at 910-17; *Ky. River Med. Ctr. v. McIntosh*, 319 S.W.3d 385, 389-93 (Ky. 2010), it has not eliminated the requirement that an unreasonable risk must exist for a premises owner to be liable.  *See Spears v. Schneider*, No. 2012-CA-65-MR, 2015 WL 2153310, at *4 (Ky. Ct. App. May 8, 2015) ("Absent an unreasonable risk, there is no breach.")

Galvan testified that the "uneven" piece of metal over which she tripped was the leveling plate used on many jetbridges.  She acknowledges in her Response in Opposition that this metal strip is there to "create a smooth transition."  Doc. 38, Pl.'s Memo. in Opp., at 5.  Although she argues that the plate "could" come loose, which could create a trip hazard, she testified that at the time of the incident, the metal strip was not loose.  The record reflects that the strips were a contrasting color to the jetbridge carpet, *see* Doc. 35-8, Photograph of Jetbridge, such that any person paying minimal attention could identify the strips and safely step over them if he or she so desired.

Plaintiff offered no expert evidence that the jetbridge was defective in design or atypical of other similar structures.  Such

5

structures are necessary to facilitate passengers boarding and leaving aircraft at airport terminal gates.

Because the record contains no evidence that the metal strip was defective or in any state of disrepair, nor evidence that any other trip hazard existed on the jetbridge at the time of Galvan's fall, the Court concludes that the jetbridge presented no unreasonable risk. Accordingly, Delta is entitled to summary judgment.

**IV. Conclusion**

Therefore, having heard from the parties and reviewed the record, and the Court being sufficiently advised,

**IT IS ORDERED** that:

(1) The motions for summary judgment by Defendant Delta Air Lines, Inc. (Doc. 33) and Defendant GoJet Airlines, LLC (Doc. 35) be, and hereby are, **GRANTED**, and Plaintiff's claims, be and hereby are, **DISMISSED WITH PREJUDICE**; and

(2) A separate judgment shall enter concurrently herewith.

This 9th day of June, 2015.



Signed By:
*William O. Bertelsman* WOB
United States District Judge